UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OPIO MOORE<br><br>Defendant. | Criminal No.  10-171 (JDB) |

MEMORANDUM OPINION AND ORDER

Defendant has asked the Court to dismiss the indictment or, in the alternative, grant a six-month continuance of trial for what he alleges is an untimely Brady disclosure of Patrice Forbes' description to detectives of the shooter of Franklin Moyler as "light skinned" and having a moustache (not a beard), a description that allegedly does not fit defendant.  The information was disclosed two days ago.

The first question is whether this information should have been disclosed under Brady. The government misses the mark in focusing on materiality "in the context of the entire record." Gov't Mot. at 1 (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)). In this pretrial setting, the Court has no way to know what the rest of the record will show; nor does the government, since at best, it can only speculate as to the trial record.  See United States v. Safavian, 233 F.R.D. 12, 16 (D.D.C. 2005); United States v. Acosta, 357 F. Supp. 2d 1228, 1232 (D. Nev. 2005); United States v. Sudikoff, 36 F. Supp. 2d 1196, 1198-99 (C.D. Cal. 1999).  Hence, the better question is whether evidence is favorable to the defense or likely to lead to the discovery of favorable evidence.  Safavian, 233 F.R.D. at 17; Sudikoff, 36 F. Supp. 2d at 1199-1200. Favorable evidence is that which "tends to help the defense by either bolstering the defense case

or impeaching potential prosecution witnesses." Safavian, 233 F.R.D. at 16.

It seems obvious that a significant discrepancy between an eyewitness description of the assailant and the defendant's actual appearance would be favorable to the defense, even if there are ways to justify or explain away the issue, and the government does not really dispute this point. See Johnson v. United States, 544 A.2d 270, 275 (D.C. 1988) (assuming that the information about government misidentification was Brady material, but finding no violation because defendant learned about information in time to use it at trial); Jamison v. Collins, 100 F. Supp. 2d 647, 679-80 (S.D. Ohio 2000) (holding that eyewitness statements that described suspect as approximately 5'6", when defendant was over 6', were favorable to defense under Brady; also holding that two statements that taller of two suspects was lighter-complected, when taller of two defendants was darker-complected, were favorable to defense under Brady); see also In Re Lott, 366 F.3d 431, 436 (6th Cir. 2004) (fact that eyewitness described assailant as "an African American man with . . . light skin" when defendant had a "medium to dark" skin tone, along with other minor discrepancies, made out a viable Brady claim that allowed the defendant to file a successive habeas petition in the district court.) Nonetheless, the government argues that the discrepancy here is not significant, and therefore there is no Brady information. The Court disagrees, and therefore will assume here that such a significant discrepancy between the eyewitness description of the shooter and the defendant's actual appearance constitutes Brady material.

The more relevant question is whether the information has been disclosed too late, and therefore there is a Brady violation. In this Circuit, the government must disclose material "in sufficient time for the defendant to 'use the favorable material effectively in the preparation and presentation of [his or her] case.'" United States v. Morrow, 412 F. Supp. 2d 146, 158 (D.D.C.

2006) (quoting United States v. Pollack, 534 F.2d 964, 973 (D.C. Cir. 1976)).  If information is both Jencks material and Brady material, it must be disclosed on the earlier Brady timeline.  Morrow, 412 F. Supp. 2d at 158;  United States v. Daum, --- F. Supp. 2d ----, 2012 WL 752156 (D.D.C. 2012) ("Brady/Giglio obligations always trump both the Jencks Act and any limiting language in Rule 16.").  The ordinary remedy for a late disclosure violation discovered before trial is a continuance.  See United States v. Blackley, 986 F. Supp. 600, 605 (D.D.C. 1997); United States v. Gatto, 763 F.2d 1040, 1044 (9th Cir. 1985).  In this Circuit, a mistrial rather than dismissal of the indictment is the remedy for Brady violations that cannot be cured by a continuance.  United States v. Evans, 888 F.2d 891, 897 n.5 (D.C. Cir. 1989).

     In virtually every case the Court has found, the courts have concluded without difficulty that Brady information received in time for the defendant to mount an adequate cross-examination is timely, and hence there is no Brady violation.  See, e.g., Morrow, 412 F. Supp. 2d at 161 (where co-defendants had six lawyers and eighteen days before relevant witness's testimony to review well-indexed materials, no Brady violation); United States v. Blackley, 986 F.Supp. 600, 605 (D.D.C. 1997) (three weeks was sufficient time to interview 24 witnesses who lived all around the country, noting that "disclosures much closer to trial have been upheld by this circuit"); United States v. Tarantino, 846 F.2d 1384, 1417 (D.C. Cir. 1988) (Brady production during trial reasonable because the defense had the opportunity to use the materials); Pollack, 534 F.2d at 973-74 (disclosures three days before trial and one day before trial adequate); United States v. Celis, 608 F.3d 818, 836 (D.C. Cir. 2010) (Giglio disclosure on first day of trial, which had to be processed during trial in light of extensive pretrial disclosures, did not create Brady violation when record showed that counsel had been able to conduct effective cross-examination); see also Gov't Mot. at 3 (citing cases to same effect).  In general, the rule

seems to be that where the defendant receives the material before cross-examination, there is usually no Brady/Giglio problem. While timeliness violations can be found in extreme situations, see United States v. Gil, 297 F.3d 93 (2d Cir. 2002) (disclosure of 2700 pages of poorly-indexed Jencks Act material one business day before start of short trial was untimely, because defense counsel did not have time to locate one particularly important memo therein), the Court concludes this is not one of them.

Here, defendant has at least four days (from disclosure), and possibly more, before Forbes's testimony early next week. In addition, if investigation turned up highly relevant material relating to Forbes later in the trial, it would presumably still be possible to bring that information to the attention of the jury, through other witnesses or by recalling Forbes; hence, defendant actually has more than two weeks to investigate. Given the limited scope of the investigation proposed by defendant, that should be sufficient. See Def.'s Mot. at 6-7. Specifically, defendant proposes to (1) interview Ms. Forbes and ask what she meant by light complexion, (2) view the scene of the murder and "interview the residents who lived there in 2007, to better understand Ms. Forbes's description of the shooter, where he came from, the lighting conditions there, and her ability to perceive what occurred" and (3) find photographs of Mr. Moore and Mr. Harper from 2007.

All of that can be accomplished now, either before or when Forbes is cross-examined. As to (1), defendant can and presumably will ask what Forbes meant by light complexion during cross-examination, and it is not clear that having Forbes's information sooner would have allowed the defense to benefit by interviewing her earlier. The Court will require the government to provide Forbes's current address or location now. As to (2), it is unclear that there has been any change in the murder scene, so defendant may still be able to conduct his investigation of the

actual scene. And there is no reason to believe that acquiring the material several weeks ago would have led to a more productive investigation of the scene. It also seems quite unlikely that other residents would be able help the defense team "better understand Ms. Forbes's description of the shooter." Finally, as to (3), photographs of Moore and Harper in 2007 may be more difficult to find now than in 2007, but they are not substantially more difficult to find now than they would have been in April 2012 (when disclosure should have occurred). In any event, the Court suspects that the three defense counsel can locate them in the next few days if it is possible to find them at all.

In conclusion, and upon consideration of the representations made in Court, the supplemental memoranda received from the parties, and the entire record herein, it is hereby **ORDERED** that defendant's motion to dismiss the indictment or, in the alternative, for a six-month continuance of the trial is **DENIED**.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Date:  June 15, 2012